**Scott BELLONE, Plaintiff**

v.

**SOUTHWICK–TOLLAND REGIONAL SCHOOL DISTRICT, Defendant.**

Civil Action No. 12–30105–KPN.

United States District Court, D. Massachusetts.

Jan. 14, 2013.

Marshall T. Moriarty, Moriarty Law Firm, Devin M. Moriarty, Moriarty and Connor, LLC, Springfield, MA, for Plaintiff.

Patricia M. Rapinchuk, Jeffrey J. Trapani, Robinson, Donovan, P.C., Springfield, MA, for Defendant.

## MEMORANDUM AND ORDER WITH REGARD TO CROSS MOTIONS FOR SUMMARY JUDGMENT

*(Document Nos. 20 and 24)*

NEIMAN, United States Magistrate Judge.

Scott Bellone ("Plaintiff") brings this three-count action against Southwick–Tolland Regional School District ("Defendant") alleging violations of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* Pursuant to Fed. R.Civ.P. 12(b)(6), Defendant moved to dismiss Plaintiff's amended complaint. ("Def. Mot. to Dismiss.") On November

1, 2012, however, the court converted Defendant's motion to dismiss into a motion for summary judgment because Defendant attached certain exhibits that were outside the pleadings. (Electronic Order No. 23.) Plaintiff thereafter filed an opposition and a cross-motion for summary judgment, attaching relevant exhibits to supplement the record. ("Pl. Mot. for Summary Judgment.") Defendant then filed a supplemental memorandum, attaching yet additional exhibits. ("Def. Supp. Memorandum")

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73. For the following reasons, the court will allow Defendant's motion for summary judgment and deny Plaintiff's cross-motion.

### I. STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must construe the facts in a light most favorable to the non-moving party. *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir.2003). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir.1994). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "The presence of cross-motions for sum-

mary judgment neither dilutes nor distorts this standard of review." *Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 205 (1st Cir.2006).

## II. BACKGROUND

The parties do not dispute the following facts which, as appropriate, are construed in a light most favorable to the non-moving parties.

Plaintiff was employed by Defendant as a teacher beginning on November 20, 2005. (Defendant's Statement of Facts ("Def. SOF") at 4.) On March 4, 2010, Plaintiff informed Defendant that he required a two-week leave for medical reasons. (Id. at 13.) Plaintiff also provided Defendant a note from his physician, Dr. Aleksandr Pugach, stating that he would be unable to work from March 3, 2010 to March 23, 2010. (Id. at 14; Exhibit A (Attached to Def. Mot. to Dismiss).) On March 23, 2010, Plaintiff provided Defendant another note from Dr. Pugach stating that he would be unable to work from March 23, 2010 to April 15, 2010. (Exhibit A (Attached to Def. Mot. to Dismiss).) The following day, Defendant's Assistant Superintendent, Paul Petit, sent Plaintiff a letter stating the following:

> The Family Medical Leave Act (FMLA) was updated by Congress in January 2009. Pursuant to this new legislation, FMLA leave can be taken concurrently with any accumulated paid leave of an employee and an employer can request the medical provider of the employee to fill out the enclosed form, Section III, Part A and B.
>
> Pursuant to the same FMLA statute, please return this form to the school

district within 15 days of you receiving it.

> Should you have any additional questions, please feel free to call me. (Def. SOF at 15; Exhibit A (Attached to Pl. Mot. for Summary Judgment).) The "enclosed form" was a U.S. Department of Labor Form WH–380–E, Certification of Health Care Provider for Employee's Serious Health Condition, *see* 29 C.F.R. Pt. 825, App. B, rev'd January 2009. (Exhibit B (Attached to Def. Mot. to Dismiss).)

On April 10, 2010, Dr. Pugach faxed to Defendant the completed Form WH–380–E, in which he represented that Plaintiff, due to severe hand tremors and anxiety, would be unable to perform any of his job functions for an "uncertain time." (Def. SOF at 17, 18; Exhibit B (Attached to Def. Mot. to Dismiss).) On May 3, 2010, however, Defendant informed Plaintiff that the form was not specific enough regarding Plaintiff's medical issues and that it required more information. (Exhibit E at ¶ 9 (Attached to Pl. Mot. for Summary Judgment).) In response, on May 10, 2010, Plaintiff gave Defendant permission to contact Dr. Pugach directly so that he could provide further clarification. (Id. at ¶ 10.)

Throughout the remaining months of the school year, Defendant continued receiving correspondence from Dr. Pugach stating that Plaintiff was unable to work. (Def. SOF at 19.) The 2009–2010 academic year ended on June 21, 2010. (Def. SOF at 20.) During this time, Plaintiff continued receiving his full pay and benefits; he also received his "summer installments," like all of the other teachers, on June 21, 2010.[1] (Id. at 21.)

---

**1.** Although Plaintiff asserts in his memorandum that he was not paid during some of the time that he was on medical leave, he has not provided any evidence to support this assertion. Accordingly, because Defendant *has* supported with admissible evidence its assertion that Plaintiff received all of his salary through the end of August, the court will consider Defendant's assertion undisputed. *See* Fed.R.Civ.P. 56(e).

On July 9, 2010, Defendant's Superintendent, John Barry, sent Plaintiff a letter stating the following:

As stated in the enclosed *Designation Notice,* you have exhausted your FMLA leave entitlement. Therefore, the District is requiring that your physician indicate his/her medical opinion regarding your ability to come back to work for the next school year.

If you are not medically able to return to work, you may apply for an unpaid leave of absence for up to one (1) year pursuant to Article X of the collective bargaining agreement.

(Def. SOF at 22; Exhibit X (Attached to Def. Mot. to Dismiss).) The enclosed Designation Notice was a U.S. Department of Labor Form WH–382, *see* 29 C.F.R. Pt. 825, App. B, rev'd January 2009, which stated that Plaintiff's FMLA leave had been exhausted as of June 4, 2010.(Id.) In accordance with a set of FMLA policies and procedures adopted by Defendant, all employees seeking to return to work after a serious illness must first provide a medical certification stating that the employee is able to resume work. (Def. SOF at 8–10.)

In the summer of 2010, during an annual review of staff certifications, Defendant discovered that Plaintiff's teaching license had expired and had not been renewed. (Def. SOF at 24.) On August 5, 2010, Barry sent Plaintiff a letter informing him that unless he obtained a valid teaching license, his position would be filled with another applicant. (Id. at 26.) Defendant then assisted Plaintiff in expediting the renewal of his license, and Plaintiff renewed his license prior to the start of the 2010–2011 academic year. (Id. at 27.) However, Plaintiff never informed Defendant between March 4, 2010, and August 30, 2010, that he was able to return to work. (Id. at 28.)

On August 25, 2010, Barry sent Plaintiff another letter informing him that his position remained open and that he had seven days to provide evidence of his ability to return to work. (Exhibit E at ¶ 14 (Attached to Pl. Mot. for Summary Judgment).) The first day of school for the 2010–2011 academic year was September 1, 2010, and staff members were required to report to work on August 30, 2010. (Def. SOF at 29.) Because of the uncertainty regarding whether Plaintiff would be able to return to work, Barry offered the 4th Grade teacher position that Plaintiff held during the 2009–2010 academic year to another individual.[2] (Id. at 30.) The offer was qualified as to whether it would be for the entire academic year because Plaintiff's status was unknown at the time. (Id. at 31, 32.)

On August 31, 2010, Defendant received a letter from Robert L. Wing, a psychologist, in which he cleared Plaintiff to return to work. (Id. at 33.) Specifically, Dr. Wing explained that he had met with Plaintiff "on five occasions from June 16th to August 16th"; that Plaintiff "has made significant progress in the[ ] areas [of stress reduction methods and problem solving strategies] over the past three months and speaks of getting back to teaching, a career he clearly loves"; and that he saw "no psychological reasons why [Plaintiff] should not return to work at the beginning of the new academic year." (Exhibit F (Attached to Def. Mot. to Dismiss).)

On September 9, 2010, Barry sent Plaintiff a letter informing him that he was

2. Defendant offered the position to the other individual during the week of August 23, 2010, and confirmed the appointment, by letter, on August 30, 2010. (Exhibit E (Attached to Def. Supp. Memorandum).)

"expected to return to work on Wednesday, September 22" and that he would be notified at that time as to his teaching assignment. (Def. SOF at 34; Exhibit G (Attached to Def. Mot. to Dismiss).) Barry also stated that Plaintiff was "being placed on paid administrative leave as of the date we received documentation from Robert Wing, Psy.D., regarding your ability to return to work in the District." (Def. SOF at 35; Exhibit G (Attached to Def. Mot. to Dismiss).) In addition, Barry informed Plaintiff that his salary would be "at the 6B15 [level] for 'the ensuing year," which is the same salary Plaintiff would have received—including the annual contractual increase—if he had returned to his prior position as a 4th Grade teacher. (Def. SOF at 35, 35, 44; Exhibit G (Attached to Def. Mot. to Dismiss).)

On September 16, 2010, Plaintiff sent Kimberley Saso—the Principal of Woodland Elementary School where Plaintiff worked—a letter stating that he was "looking forward to returning to work" on September 22nd and inquiring as to his teaching assignment. (Def. SOF at 37; Exhibit H (Attached to Def. Mot. to Dismiss).) Shortly thereafter, Saso spoke with Plaintiff, explaining that "there was nothing definitive" about his new assignment and that she was unsure as to whether Plaintiff "would be able to resume full teaching responsibilities." (Def. SOF at 38; Exhibit E (Attached to Pl. Mot. for Summary Judgment).) Defendant ultimately assigned Plaintiff the following position:

> Half of the Plaintiff's workday would be spent as a co-teacher in the same classroom and grade where he previously taught. The other half of the day would be spent as a teacher of individual students and small groups from the 3rd and 4th Grades, providing MCAS-based math tutoring and instruction.

(Def. SOF at 39.) Approximately eleven staff members at Woodland Elementary School hold similar positions and each is paid as a teacher under the collective bargaining agreement. (Id. at 40.) Plaintiff's new position provided the same benefits and rights as other teaching positions, including health insurance, vacations, sick leave, and preparation time. (Id. at 40, 41.) [3]

Plaintiff failed to report to work on September 22, 2010. (Id. at 46.) In response, Barry sent Plaintiff a letter on September 23, 2010 explaining that "[t]he District is treating you as having abandoned your position" and that he intended to terminate Plaintiff's employment. (Id. at 47; Exhibit I (Attached to Def. Mot. to Dismiss).) Barry also explained that Plaintiff could appeal his decision within ten school days but that he was immediately suspended without pay. (Exhibit I (Attached to Def. Mot. to Dismiss).) After Plaintiff failed to request a hearing or respond to the September 23 letter, Barry sent Plaintiff another letter on October 13, 2010, stating that his employment had been terminated. (Def. SOF at 47; Exhibit J (Attached to Def. Mot. to Dismiss).) Defendant sent Plaintiff payment for all wages accrued from August 30, 2010, the first working day of the 2010–2011 academic year and the date on which Plaintiff was retroactively placed on administrative leave. (Def. SOF at 48.)

### III. STATUTORY AND REGULATORY SCHEME

■ The FMLA entitles eligible employees to twelve weeks of leave during a

---

**3.** Although Plaintiff asserts in his memorandum that the new position entailed a reduction in pay, he has not provided any evidence to support this assertion. Again, because Defendant *has* supported with admissible evidence its assertion that the pay of the new position was the same as Plaintiff's prior position, the court will consider Defendant's assertion undisputed. *See* Fed.R.Civ.P. 56(e).

twelve-month period for "serious health condition[s] that make[ ] the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "[O]n return from such leave," eligible employees are entitled "(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). If the employee is medically unable to return to work after the exhaustion of the twelve weeks of leave, however, he or she is no longer entitled to restoration. *See Colburn v. Parker Hannifin/Nichols Portland Div.,* 429 F.3d 325, 332 (1st Cir.2005); *Barry v. Wing Memorial Hospital,* 142 F.Supp.2d 161, 165 (D.Mass.2001); *see also* 29 C.F.R. § 825.216(c). Moreover, "[a]s a condition of restoration ... the employer may have a uniformly applied practice or policy that requires each such employee" to obtain a certification from his or her health care provider stating that the employee is able to resume work ("fitness-for-duty certification"). 29 U.S.C. § 2614(a)(4).

Pursuant to the implementing regulations, employers are required to provide employees with individual notices concerning their FMLA rights at various times. See 29 C.F.R. § 825.300(b)-(d). As relevant here, an employer must notify an employee of the employee's eligibility to take FMLA leave ("eligibility notice"), absent extenuating circumstances, within five business days of an employee's request for FMLA leave or within five business days of when "the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason." 29 C.F.R. § 825.300(b). The employer also must notify the employee whether the leave will be designated as FMLA leave ("designation notice") within five business days of

"[w]hen the employer has enough information to determine whether the leave is being taken for a FMLA qualifying reason," again, absent extenuating circumstances. 29 C.F.R. § 825.300(d). Additionally, "[i]f the employer will require the employee to present a fitness-for-duty certification to be restored to employment, the employer must provide notice of such requirement with the designation notice." 29 C.F.R. § 825.300(d)(3).

■ "The FMLA provides a right of action for employees to recover based on an employer's interference with rights guaranteed by the act or for retaliation by employers against employees who exercise their FMLA rights." *Roman v. Potter,* 604 F.3d 34, 43 (1st Cir.2010). Pursuant to the regulations, "[f]ailure to follow the notice requirements" may give rise to an interference claim. *See* 29 C.F.R. § 825.300(e). However, in order to recover for technical violations of the notice requirements, an employee must "show that the lack of notice caused some prejudice." *Dube v. J.P. Morgan Investor Serv.,* 201 Fed.Appx. 786, 788 (1st Cir. 2006); *see also Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89, 91, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002).

■ Unlike an interference claim, in which the intent of the employer is irrelevant, a retaliation claim requires that the employee, to prevail, demonstrate that the employer subjected the employee to an adverse employment action *because of* the employee's exercise of his or her FMLA rights. *See Colburn,* 429 F.3d at 332. The employee may make this showing of motivation either directly or by inference. *Id.* As to the inferential approach, the First Circuit has adopted a modified version of the framework established in *McDonnell Douglas Corp. v. Green,* 411

U.S. 792, 800–806, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as follows:

> Under that framework, a plaintiff employee must carry the initial burden of coming forward with sufficient evidence to establish a prima facie case of ... retaliation. If he does so, then the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's [termination]," sufficient to raise a genuine issue of fact as to whether it discriminated against the employee.... If the employer's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for terminating him was in fact a pretext for retaliating against him for having taken protected FMLA leave.

*Colburn,* 429 F.3d at 336 (quoting *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 160–61 (1st Cir.1998)).

## IV. DISCUSSION

In Count I of his amended complaint, Plaintiff claims that Defendant interfered with his FMLA rights by failing to timely provide an eligibility notice and a designation notice. In Count II, Plaintiff claims that Defendant's request for a fitness-for-duty certification interfered with his FMLA rights and was retaliatory. And in Count III, Plaintiff claims · that Defendant's actions, namely, its failure to provide a timely designation notice and its failure to return him to his prior position

or a substantially similar position, were retaliatory.[4]

### A. Count I—Untimely Notice

Defendant argues that it is entitled to summary judgment on Count I because Plaintiff has failed to provide any evidence that he was harmed by any late notices and, in fact, was offered an equivalent position upon his return from leave. Plaintiff, in response, contends that the late notices harmed him in that he could have acted differently had he known that he risked exhausting his FMLA leave and that, as a result, he was offered a "lesser" position by Defendant.[5]

█ As an initial matter, the record demonstrates that Defendant neither sent a timely nor an adequate eligibility notice. As described, the governing regulations require an employer to send an employee an eligibility notice within five business days of "acquir[ing] knowledge that an employee's leave *may* be for an FMLA-qualifying reason." 29 C.F.R. § 825.300(b) (emphasis added). While Defendant argues that it was "a mere fifteen days late" in sending the eligibility notice, the court concludes that the letter and form that Defendant sent was not only untimely but was insufficient to qualify as an eligibility notice. The letter simply explained that FMLA leave may be taken concurrently with paid leave and requested that Plaintiff have his doctor fill out a medical certification form. The letter did not, however, contain any of the information required by 29 C.F.R. §§ 825.300(b)(2) and 825.300(c).

---

**4.** Plaintiff also claims in Count III and in his memorandum that Defendant's requirement that he provide a fitness-for-duty certification constituted retaliation. As noted, however, Plaintiff makes this same claim in Count II. The court will ignore this duplicative pleading and briefing and will address this claim in the context of Count II only.

**5.** The court notes that, in various parts of both his amended complaint and his memorandum, Plaintiff conflates the eligibility and designation notice requirements. Nevertheless, the court is confident that Plaintiff intends to identify deficiencies with regard to both.

Neither did it provide the information contained in U.S. Department of Labor Form WH–381, *see* 29 C.F.R. Pt. 825, App. D, rev'd November 2008, Notice of Eligibility and Rights and Responsibilities, which would be adequate to comply with 29 C.F.R. §§ 825.300(b)(2) and 825.300(c). The form that Defendant did send was not an eligibility notice but, rather, a U.S. Department of Labor Form WH–380–E, Certification of Health Care Provider for Employee's Serious Health Condition, *see* 29 C.F.R. Pt. 825, App. B, rev'd January 2009, which an employer may separately require of an employee pursuant to 29 C.F.R. § 825.306.

It appears as well that Defendant's designation notice, as distinct from the eligibility notice, was also sent late. As described, an employer is required to send an employee a designation notice within five business days of having "enough information to determine whether the leave is being taken for an FMLA-qualifying reason." 29 C.F.R. § 825.300(d). Looking at the facts in a light most favorable to Plaintiff, the court finds for present purposes that Defendant had sufficient information to designate Plaintiff's leave as FMLA-qualifying prior to five business days before July 9, 2010, the date Defendant sent Plaintiff the designation notice. After all, on May 10, 2010—following Defendant's letter stating that Plaintiff's medical certification was insufficient—Plaintiff authorized Defendant to communicate directly with Dr. Pugach. Presumably, then, Plaintiff had, or should have obtained, all the information it needed shortly after May 10, 2010, which would make the designation notice almost two months late.

■ Late or inadequate notices in and of themselves, however, are not actionable unless they somehow harm the employee. *See Dube,* 201 Fed.Appx. at 788; *see also Ragsdale,* 535 U.S. at 89, 91, 122 S.Ct.

1155. Here, Plaintiff has presented no genuine or material facts which demonstrate such harm, and it is for that reason that Defendant prevails.

The record demonstrates, as Defendant asserts, that Plaintiff was not medically able to work until well after June 4, 2010, the date on which his FMLA leave expired. First, according to Superintendent Barry's affidavit, "[t]hroughout the remaining months of the school year [Defendant] continued to receive correspondence from Dr. Pugach advising of [Plaintiff's] inability to perform the duties of his position." (Exhibit 1 at ¶ 18 (Attached to Def. Supp. Memorandum).) The 2009–2010 academic year did not end until June 21, 2010. (Def. SOF at 20.). Therefore, at least until that date, Plaintiff, according to the information provided by his doctor, was medically unable to return to work.

Second, the letter from Dr. Wing clearing Plaintiff to return to work, which Defendant received on August 31, 2010, indicates that Plaintiff was medically unable to return to work prior to that clearance. In the letter, Dr. Wing states that he had met with Plaintiff five times from June 16, 2010 to August 16, 2010, that Plaintiff "made significant progress ... over the past three months," and that he believed Plaintiff could return to work "at the beginning of the new academic year," commencing September 1st. (Exhibit F (Attached to Def. Mot. to Dismiss).) The clear implication of the letter is that, during those "past three months," Plaintiff was not capable of returning to work.

It should be noted that Plaintiff's present argument—that he would have acted differently had Defendant's notices not been late—suggests that he somehow could have prevailed upon his doctor to clear him for work much earlier, despite medical evidence to the contrary. Plaintiff, however, presents no evidence to

support this argument; indeed, the argument is presented only in his brief without any supporting attestation. In contrast, Defendant has provided evidence, *i.e.*, correspondence with Dr. Wing, which demonstrates that Plaintiff could *not* have returned to work before his FLMA leave expired in June or, indeed, until at least the end of August 2010. Accordingly, the court has no choice but to deem Defendant's factual assertion—that Plaintiff was not medically able to return to work until September 1, 2010—undisputed. *See* Fed.R.Civ.P. 56(e).

Because Plaintiff was medically unable to return to work until well after his FMLA leave had expired, he could not have been harmed by the notice violations, even assuming that he was offered a "lesser" position. As the First Circuit held in *Colburn*, 429 F.3d at 332, an employee is not entitled to reinstatement under the FMLA if he or she is unable to return to work until after the expiration of the FMLA leave. Courts have also held that an employee is not harmed by late or inadequate notice when the employee was incapable of returning to work after the twelve weeks of FMLA leave, even when the employee attempts to connect the lack of reinstatement to the notice violations, as Plaintiff does here. For example, in *Donahoo v. Master Data Center*, 282 F.Supp.2d 540, 552, 555 (E.D.Mich.2003), the court, after determining that the employee was not restored to an equivalent position upon her return from FMLA leave, held nonetheless that she was not harmed by the employer's failure to provide a designation notice. The court explained:

> The undisputed evidence, in the form of notes from her treating physicians, establishes that she was physically unable to return to work after twelve weeks. Therefore, even if Defendant had properly notified her that the first twelve weeks of her leave was FMLA leave (or, as she claims, even if Defendant granted her express request for FMLA leave), she would have had to switch to Defendant's own disability leave plan at the expiration of her FMLA leave, and upon her return she would have returned from her employer's leave, not her FMLA leave.

*Id.* at 555–56. The court concluded that, "because Plaintiff did not, and could not, return after twelve weeks, she was no longer protected by the FMLA and Defendant did not violate the FMLA" by failing to reinstate her to her previous position or an equivalent one. *Id.* at 556.

Similarly, in *Roberts v. The Health Association*, 2007 WL 2287875, at \*5 (W.D.N.Y. 2007), the court first assumed that the employer had violated the notice requirements and explained that the employee was required to demonstrate that she was harmed by the violation. *Id.* (citing *Ragsdale*, 535 U.S. at 89, 122 S.Ct. 1155). The court then addressed the employee's argument that "she was prejudiced by the lack of notice of her FMLA rights because the lack of notice prevented her from possibly structuring her leave differently." *Id.* at \*6. The court concluded that,

> because [plaintiff] was unable to work for a period far exceeding 12 weeks ... plaintiff cannot, under the undisputed facts, establish that she could have altered her leave in any manner that would have benefitted her. [Plaintiff] could not have taken any less time off from work because she was medically unable to return to work for all but three days between March 25, 2004 and July 19, 2004. I therefore find that plaintiff has failed to establish that she was prejudiced by the alleged failure of the defendant to provide adequate notice of her FMLA rights, and grant defen-

dant's motion for summary judgment with respect to this claim.

*Id.*

The analyses in both *Donahoo,* 282 F.Supp.2d at 555–56, and *Roberts,* 2007 WL 2287875, at *5–6, are not only persuasive but directly applicable to the case at bar. The undisputed facts show that Plaintiff could not have returned to work prior to the exhaustion of his leave, let alone before the end of August 2010, even if Defendant had fully complied with the notice requirements. Therefore, to the extent Plaintiff premises his harm on Defendant's failure to reinstate him to his previous position or an equivalent one, the court concludes that Plaintiff has not been harmed by Defendant's technical notice violations. In so ruling, of course, the court does not need to decide whether the new position offered to Plaintiff was indeed a "lesser" position as Plaintiff claims. That is simply inconsequential. If anything, based on the undisputed facts articulated above, the position offered to him appears to be equivalent to his prior position.

Nevertheless, in addition to his argument concerning a "lesser" position, Plaintiff contends that he was harmed because the notice violations "caused [him] to unknowingly exhaust his FMLA leave," which led Defendant to require him to provide a fitness-for-duty certification before returning to work. According to Plaintiff, this requirement, in turn, "forced [him] to incur the additional costs associated with an additional doctor's visit." As discussed in more detail below, however, Defendant has demonstrated without dispute that it required Plaintiff to obtain a fitness-for-duty certification in accordance with a uniform policy applicable to all employees seeking to return to work following a serious illness. Therefore, even assuming that the costs of a doctor's visit in connection with a fitness-for-duty certifica-

tion could constitute harm, Defendant's notice violations did not "cause" Plaintiff to incur those costs.

Accordingly, the court will allow Defendant's motion for summary judgment as to Count I.

### B. *Count II—Fitness-for-duty Certification*

■ As to Count II, in which Plaintiff claims that Defendant's request for a fitness-for-duty certification interfered with his FMLA rights and was retaliatory, Defendant argues that it is entitled to summary judgment because it maintained and consistently applied a uniform policy, in accordance with the FMLA, which requires employees to obtain such certifications before returning to work after serious health conditions. Accordingly, Defendant argues, its request that Plaintiff provide a medical opinion regarding his ability to return to work constitutes neither interference with his FMLA rights nor retaliation. The court agrees.

To be sure, Plaintiff argues that Defendant did not impose the fitness-for-duty certification requirement as part of a uniform policy and that "Defendant made this request as an additional barrier to [his] return to work." Defendant, however, has provided admissible and irrefutable evidence that it maintained and applied a uniform policy requiring all employees returning from serious medical conditions to provide a written medical certification before resuming work. In particular, Defendant provided the actual set of policies and procedures it adopted, which state, in relevant part, that "[b]efore the employee may resume work, the employee must present his or her supervisor with written medical certification from the employee's health care provider that the employee is able to resume work." (Exhibit C (Attached to

Def. Supp. Memorandum).) Defendant also provided an affidavit from Superintendent Barry stating that "[t]he District consistently applies this policy and requires medical certification for all employees returning from serious illness." (Exhibit 1 (Attached to Def. Supp. Memorandum).) Plaintiff has not provided any evidence to rebut Defendant's assertion. Accordingly, the court again has no choice but to consider Defendant's factual assertion undisputed. *See* Fed.R.Civ.P. 56(e).

The FMLA, it must remembered, specifically permits employers to implement fitness-for-duty requirements in 29 U.S.C. § 2614(a)(4). In applicable part, the FMLA provides that "[a]s a condition of restoration ... the employer may have a uniformly applied practice or policy that requires each such employee to receive certification from the health care provider of the employee that the employee is able to resume work." In addition, governing regulations provide that "[i]f the employer will require the employee to present a fitness-for-duty certification to be restored to employment, the employer must provide notice of such requirement with the designation notice." 29 C.F.R. § 825.300(d)(3). Here, because Defendant complied with the statutory and regulatory requirements, its actions did not constitute an interference with Plaintiff's FMLA rights.

Moreover, as to Plaintiff's contention that the fitness-for-duty requirement served as a retaliatory barrier to his return to work, Defendant has sufficiently demonstrated that it had a legitimate, non-discriminatory reason for enforcing that requirement, namely, its uniform policy. Most importantly, perhaps, Plaintiff has not provided any evidence that Defendant's reason for insisting on a fitness-for-

duty certification was merely a pretext for retaliation. *See Colburn*, 429 F.3d at 336. As a result, the court will allow Defendant's motion for summary judgment as to Count II.

## C. *Count III—Retaliation*

As to Count III—in which Plaintiff alleges that Defendant retaliated against him for taking FMLA leave by failing to timely provide a designation notice and by failing to restore him to his prior or a substantially similar position—Defendant asserts that the court should enter summary judgment in its favor on Count III for a number of reasons. First, Defendant argues, the claims alleged in Count III are more properly viewed as interference claims rather than retaliation claims. Second, Defendant argues that, in any event, Plaintiff cannot satisfy his burden of proving retaliation because he has neither provided nor proffered any supporting evidence. Granted, Plaintiff points to the possibility of a causal connection between his taking FMLA leave and the adverse employment actions in that those actions would not have occurred in the absence of the leave; according to Plaintiff, this suffices to satisfy his burden of establishing a *prima facie* case of retaliation. For the reasons which follow, Defendant has the far better argument.[6]

As explained, pursuant to the First Circuit's modified version of the *McDonnell Douglas* burden-shifting framework for FMLA retaliation claims where there is no direct evidence of retaliation, a plaintiff has the initial burden of establishing a *prima facie* case before the burden of production shifts to the defendant to show a legitimate, non-discriminatory reason for

---

6. Defendant also argues that it had a legitimate, non-discriminatory reason for terminating Plaintiff. Plaintiff's ultimate termination, however, is not one of the adverse employment actions of which he complains.

the adverse employment action. *See Colburn,* 429 F.3d at 336. "To make out a prima facie case of retaliation, [a plaintiff] must show that (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action." *Hodgens,* 144 F.3d at 161.

█ In this case, there is no dispute that Plaintiff availed himself of a protected right under the FMLA, that is, taking FMLA leave. As Defendant argues, however, Plaintiff's claims regarding the untimely designation notice is more accurately a claim of interference, not retaliation; simply put, the untimely notice is not the type of conduct which, on its own, "a reasonable employee would [find to be] materially adverse" in the sense that it would dissuade the employee from taking FMLA leave. *See Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (construing the "adverse employment action" requirement for Title VII retaliation claims); *see also Lushute v. Louisiana, Dep't of Soc. Servs.,* 479 Fed.Appx. 553, 555 (5th Cir.2012) (applying Burlington Northern's "adverse employment action" standard to the FMLA context); *Breneisen v. Motorola, Inc.,* 512 F.3d 972, 979 (7th Cir.2008) (same). In addition, as discussed, Plaintiff was not harmed by the late notice because, as the undisputed facts demonstrate, he was not medically able to return to work until the end of August 2010. *See Burlington Northern & Santa Fe Railway Co.,* 548 U.S. at 67, 126 S.Ct. 2405 ("We speak of material adversity because we believe it is important to separate significant from trivial harms."). In this regard, the court has not found a single case in which untimely notice on the part of an employer has been analyzed under a retaliation theory. Accordingly, Plaintiff's claim regarding the late notice, "at bottom," appears to fall more on the side of an interference claim, in which an employee asserts that the employer denied him a substantive right under the FMLA rather than retaliated against him. *See Colburn,* 429 F.3d at 332. Even assuming that the late designation notice constitutes an adverse employment action, the court concludes, as discussed below, that Plaintiff fails to satisfy the third prong of his *prima facie* burden, light though that burden may be.

Regarding the failure to restore Plaintiff to his prior position or an equivalent one, Defendant again argues that the new position offered to Plaintiff for the 2010–2011 academic year was equivalent to his prior position. The court agrees. Yet even were the court to assume that the new position was "lesser" than Plaintiff's previous position—insofar as a reasonable employee *could* consider the reassignment to be materially adverse—Defendant is still deserving of summary judgment in light of the undisputed facts.

In short, Plaintiff proffers no evidence, with reference to the third prong of his *prima facie* burden, that supports an inference of a causal connection between his taking FMLA leave and the actual "adverse" employment actions to which he points. As a result, the court is left to analyze only whether the mere temporal proximity between the protected conduct and the adverse employment actions is sufficient to raise an inference of a causal link. The court concludes that it is not.

█ As to the untimely designation notice, the purported retaliatory conduct began no earlier than May 10, 2010, when Plaintiff gave Defendant permission to contact Dr. Pugach directly to obtain clarification of Plaintiff's medical issues. Thus, the conduct Plaintiff complains of, if ad-

verse it was, began over two months after Plaintiff first took FMLA leave, on March 4, 2010. As to Defendant's failure to restore Plaintiff to his prior or an equivalent position, the purported retaliatory conduct occurred on August 31, 2010, at the earliest, over two months after his FMLA leave expired, when Defendant received the letter from Dr. Wing clearing Plaintiff to return to work. As in *Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 425 F.3d 67, 85–86 (1st Cir.2005), however, where the First Circuit concluded that the plaintiff failed to establish a causal connection between his protected activity and the adverse employment action even though they were only two months apart, Plaintiff has failed to support a causal connection between his FMLA leave and the "adverse" actions he complains about. As the First Circuit explained, " '[c]hronological proximity does not by itself establish causality, particularly if [t]he larger picture undercuts any claim of causation.' " *Id.* at 85 (quoting *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir.2003)).

Here, the larger picture, as described, does not support in any way a claim of retaliatory motive. If anything, the larger context actually undercuts Plaintiff's claims. First, Defendant provided Plaintiff with more than the statutorily required twelve weeks of FMLA leave and all of his pay and benefits during his leave. Second, although Defendant sent the designation notice late, it not only gave him almost the entire summer to obtain a fitness-for-duty certification before returning to work but, as well, assisted him in renewing his expired teaching license. Moreover, it was not until a week before the first day that staff members were to report to work for the 2010–2011 academic year that, in light of the uncertainty as to whether Plaintiff could return, Defendant filled Plaintiff's prior position with another individual.

(Exhibit E (Attached to Def. Supp. Memorandum).) Without anything more than temporal proximity, which in any event is not "very close" here, *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 25 (1st Cir.2004), Plaintiff's allegations of retaliatory motive are simply too tenuous when considering the larger picture. In sum, Plaintiff has not presented evidence from which a reasonable jury could infer that Defendant retaliated against him for engaging in FMLA-protected activity. *See Ramirez Rodriguez*, 425 F.3d at 86.

Accordingly, the court will allow Defendant's motion for summary judgment as to Count III.

## V. CONCLUSION

For the reasons stated, Defendant's motion for summary judgment is ALLOWED and Plaintiff's cross-motion for summary judgment is DENIED.

SO ORDERED.

